[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 06, 2000
THOMAS K. KAHN
CLERK

_____

No. 00-10730
Non-Argument Calendar

_____

D.C. Docket 98-00239-CIV-OC-21C

STEPHEN GROSSMAN,

Plaintiff-Appellant,

versus

NATIONSBANK, N.A.,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Middle District of Florida

_____

**(September 6, 2000)**

Before TJOFLAT, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Stephen Grossman appeals the district court's order

dismissing his complaint for failure to state a claim upon which relief could be

granted.  Fed.R.Civ.P. 12(b)(6).  This case arises out of Grossman's claims that

Nationsbank improperly transmitted a fund transfer on his behalf through the Federal Reserve Wire Transfer Network ("Fedwire").[1]  Grossman alleged that the improper transfer resulted in damages of over $200,000 to him.  After review, we affirm.

## I.  GROSSMAN'S COMPLAINT

We first review the allegations in Grossman's complaint.  Grossman's complaint alleges that he entered into a joint venture agreement (the "JV agreement") with HMF Management ("HMF") in order to participate in an investment program.  On October 7, 1996, in furtherance of the JV agreement, Grossman opened an account at First Union National Bank (the "HMF-Grossman JV account").  Grossman received instructions from HMF for the wire transfer of Grossman's investment funds into the HMF-Grossman JV account at First Union.  Grossman attached to his complaint as Exhibit B a copy of the wire-transfer instructions as he received them from HMF.  The wire transfer instructions read as follows:

---

[1]  Fedwire is the funds-transfer system owned and operated by the Federal Reserve Banks. See 12 C.F.R. § 210.26(e).  Fedwire is an "electronic funds transfer system which permits large dollar fund transfers by computer-to-computer communications between banks."  Lopez v. First Union National Bank of Florida, 129 F.3d 1186, 1188 (11th Cir. 1997).

WIRE TRANSFER INSTRUCTIONS
HMF-GROSSMAN JV

BANK NAME:                          AM SOUTH BANK
BANK ADDRESS:                       CLEARWATER, FLORIDA
ABA#:                               063 210 112
ACCOUNT NAME:                       DIVERSIFIED VENTURES
ACCOUNT NUMBER:                     3283155856

FOR FURTHER CREDIT TO:
        BANK NAME:                  FIRST UNION
        BANK ADDRESS:               JACKSONVILLE, FLORIDA
        ABA#:                       063000021
        ACCOUNT NAME:               HMF-GROSSMAN JV
        CAP ACCOUNT NUMBER:         9981575600 [handwritten]

(R1-2 at Exh. B). The wire transfer instructions thus directed that the funds be wired to bank name "Am South Bank," account name "Diversified Ventures," account number 3283155856, and then "for further credit to" bank name "First Union," account name "HMF-Grossman JV," account number 9981575600.

On October 11, 1996, Grossman visited a Nationsbank[2] branch office and requested assistance in effecting the wire transfer of his funds to the HMF-Grossman JV account. Grossman provided a copy of the wire-transfer instructions to an employee of Nationsbank. The employee prepared a "Request for Funds Transfer" form that Grossman signed. Grossman attached to his complaint at Exhibit C a copy of the funds transfer form. The funds transfer form contained the

---

[2] Grossman originally filed his complaint against Barnett Bank. After Barnett Bank merged into Nationsbank, Nationsbank was substituted as the defendant in this case. To avoid confusion, we will refer only to Nationsbank in this opinion.

following information, in pertinent part (the printed form headings are underlined):

WIRE AMOUNT $250,000.00

RECEIVING BANK (Use ONLY if different from Beneficiary's Bank)
FINAL DESTINATION: FIRST UNION, JACKSONVILLE, FL R/T
# 06300021, HMF-GROSSMAN JV # 9981575600

BENEFICIARY'S BANK
FIRST DESTINATION: AM SOUTH BANK, CLEARWATER, FL R/T/ #063
210 112 DIVERSIFIED VENTURES

BENEFICIARY NAME
AM SOUTH BANK

BENEFICIARY ACCOUNT NUMBER (REQUIRED)
3283155856

ORIGINATOR TO BENEFICIARY INFORMATION (SPECIAL
INSTRUCTIONS, EX. ATTENTION, REFERENCE NUMBER, ETC.)
FINAL DESTINATION ADDRESS: FIRST UNION 2801 SOUTHWEST HIGH
MEADOWS AVE, PALM CITY, FL 34490

ORIGINATOR/BY ORDER OF
STEPHEN GROSSMAN   METHOD OF PAYMENT: DBT ACCT # 2010788969

(R1-2 at Exh. C).

On October 17, 1996, Grossman was again in the Nationsbank branch office.

The employee who had prepared the funds transfer form asked Grossman if the

transfer had gone well. Grossman replied that he assumed it had gone well because

the funds had reached the HMF-Grossman JV account at First Union. The

employee then told Grossman that the "wire transfer room" had told her that

because both Nationsbank and First Union were "on line," there was no need to

route the funds through Am South Bank. As a result, Nationsbank had wired the

4

money directly to First Union for credit to the HMF-Grossman JV account.

Grossman then reviewed the joint-venture documents, and determined that the transfer directly from Nationsbank to the HMF-Grossman JV account "appeared to be inconsistent with the wiring instructions given to him." While the funds had reached the ultimate intended account, the HMF-Grossman JV account, the funds had gone to the account directly and not through Am South Bank and the Diversified Ventures account. On October 18, 1996, Grossman again contacted the Nationsbank branch office and requested that the "wire be sent in accordance with the instructions he had been provided and, in turn, had provided the bank." After the same Nationsbank employee consulted with the "wire room," she told Grossman that the funds would be recalled and resent in conformity with the instructions.

Within the next several days, Grossman received confirmation from both the "wire room" and the same Nationsbank employee that the funds had been recalled and resent. However, in early November, Grossman contacted First Union and learned that no deposit had been received to the HMF-Grossman JV account. Grossman immediately called Am South Bank to inquire as to why the funds had not been forwarded to the HMF-Grossman JV account as the wiring instructions had directed. Am South told Grossman that it could not provide him any

information regarding an account to which he was not a signatory, and that he should contact the owner of the Diversified Ventures account at Am South to which Nationsbank had wired the funds.

Over the next several months, Grossman tried unsuccessfully to determine what had happened to the funds that were intended for deposit in the HMF-Grossman JV account at First Union. Nationsbank continued to insist that it had transferred the money to Am South according to Grossman's instructions, and that it was then Am South's responsibility to complete the transaction pursuant to the instructions that Nationsbank had forwarded to Am South with the funds. In March 1997, Am South informed Grossman that the Diversified Ventures account had been closed in February 1997.

HMF, the sole signatory to the Diversified Ventures account at Am South, initially told Grossman that the delay in forwarding the funds to the HMF-Grossman JV account at First Union had been due to a federal audit of Diversified Ventures. However, on March 6, 1997, HMF wired $50,000.00 to Grossman's Nationsbank account in return for an agreement from Grossman authorizing HMF to deduct $50,000.00 from the principle sum of the investment that it would soon transfer to the HMF-Grossman JV account. Grossman attached to his complaint at Exhibit D a copy of this agreement.

6

In August 1997, Grossman sought assistance from the Federal Reserve Bank in Washington D.C. Officials there informed him that Nationsbank was responsible for the loss of the funds due to its failure to execute the payment order according to Grossman's instructions. According to the Federal Reserve, the loss of the funds was not to be blamed on Am South's failure to forward the funds as instructed. As a result, Grossman made a written demand for damages on Nationsbank. Nationsbank promised to address Grossman's demands "as expeditiously as possible," but never concluded its inquiry. Grossman's complaint alleges damages in excess of $200,000.00 as a result of Nationsbank's "failure to complete the wire transfer transaction in accordance with the instructions Grossman had provided, or to advise Grossman that such transaction could not be completed as structured."

## II. THE DISTRICT COURT'S ORDER

In its motion to dismiss, Nationsbank contended that Grossman failed to plead the essential elements of a cause of action for the erroneous execution of a Fedwire funds transfer. Fed.R.Civ.P. 12(b)(6). In granting Nationsbank's motion to dismiss, the district court noted that Grossman's complaint had failed to specify pursuant to which statute or statutes he had filed his claims, and whether he was suing under Florida or federal law. After an analysis of the preemptive effect of

federal regulations, the district court concluded that even if Grossman had intended to proceed under Florida law, the state law would be preempted by Subpart B of Federal Reserve Board Regulation J ("Regulation J"),[3] which governs wire transfers effected through Fedwire.

Therefore, the district court analyzed the claims in Grossman's complaint exclusively using Subpart B of Regulation J, which applies U.C.C. Article 4A as the governing statute for Fedwire funds transfers. See 12 C.F.R. § 210.25(b)(1) (providing also that Regulation J controls in the event of inconsistencies with U.C.C. Article 4A). All of the parties now agree that Nationsbank's duty was governed by Regulation J and U.C.C. Article 4A. The parties disagree regarding whether the district court properly held that Grossman's complaint failed to allege a cause of action under Regulation J, 12 C.F.R. Part 210, Subpart B, App. B, § 4A-302(a)(1).

## III.   STANDARD OF REVIEW

We review de novo a district court's order dismissing a complaint for failure to state a claim upon which relief could be granted. See Lopez v. First Union National Bank of Florida, 129 F.3d 1186, 1189 (11th Cir. 1997) (citation omitted).

---

[3] 55 Fed. Reg. 40,791 (1990) (as amended Oct. 5, 1990) (codified at 12 C.F.R. Part 210 (Subpart B & Appendix B)).

8

When considering a motion to dismiss, all facts set forth in the plaintiff's complaint "are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." GSW, Inc. v. Long County, 999 F.2d 1508, 1510 (11th Cir. 1993). A complaint may not be dismissed pursuant to Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Lopez, 129 F.3d at 1189 (internal quotations and citation omitted).

## III.  DISCUSSION

The district court held, and the parties agree, that the provisions of Regulation J exclusively apply to the fund transfer in this case because it was effected by the use of Fedwire, the Federal Reserve Banks' wire-transfer system. See 12 C.F.R. § 216.25-32. Regulation J applies U.C.C. Article 4A to wire transfers conducted using Fedwire. See 12 C.F.R. § 210.25(b)(1); Appendix B to Subpart B to Part 210[4]; see also Donmar Enters. Inc. v. Southern Nat'l Bank, 64 F.3d 944, 948 (4th Cir. 1995).

We address Nationsbank's duty under Regulation J and U.C.C. Article 4A once Grossman requested the fund transfer, so that we can determine whether

_____

[4] Subsection 210.25(b)(1) states that Subpart B to Part 210 (the codification of Regulation J) "incorporates the provisions of Article 4A set forth in appendix B to this subpart. In the event of an inconsistency between the provisions of the sections of this subpart and appendix B, to this subpart, the provisions of the sections of this subpart shall prevail."

Grossman's complaint sufficiently stated a claim that Nationsbank breached its

duty under those provisions. However, we will first provide Article 4A's

definition of the terms that are necessary to discuss the wire-transfer process in

this case.[5] The <u>originator</u> is "the sender of the first payment order in a funds

transfer," in this case, Grossman.[6] 12 C.F.R. Part 210, Subpart B, App. B, § 4A-

104(c). The <u>payment order</u> is the "instruction . . . to pay . . . a fixed or

determinable amount of money to a beneficiary." <u>Id.</u> § 4A-103(a)(1). The

<u>originator's bank</u> is "the receiving bank to which the payment order of the

originator is issued if the originator is not a bank." <u>Id.</u> § 4A-104(d)(i). Because

Grossman is not a bank, he took his payment order to the originator's bank, in this

case, Nationsbank. The <u>beneficiary</u> is "the person to be paid by the beneficiary's

bank." <u>Id.</u> § 4A-103(2). The <u>beneficiary's bank</u> is "the bank identified in the

payment order in which an account of the beneficiary is to be credited pursuant to

the order or which otherwise is to make payment to the beneficiary if the order

---

[5] We recognize that many other terms would need to be defined to allow a complete understanding of the complex wire-transfer process. In an attempt to present this subject in the most simple, yet comprehensive, manner, we have selected to define the following terms. We believe that these definitions are sufficient to discuss the issues in this case.

[6] A <u>sender</u> is defined as "the person giving the instruction to the receiving bank." 12 C.F.R. Part 210, Subpart B, App. B, § 4A-103(5). There is a sender at each step in the transfer chain, but for our purposes, it is important to note that Grossman was a sender when he transmitted the initial wire-transfer instructions to Nationsbank. A <u>receiving bank</u> is "the bank to which the sender's instruction is addressed." <u>Id.</u> § 4A-103(4).

10

does not provide for payment to an account.  Id. § 4A-103(3).

In the simplest Fedwire transfer, the funds to be transferred are debited from the originator's account, and travel from the originator's bank to the beneficiary's bank, where the beneficiary's account is credited.[7]  However, an originator can instruct the originator bank that the funds are to travel through one or more intermediary banks, defined by Article 4A as a "receiving bank other than the originator's bank or the beneficiary's bank."  Id. § 4A-104(b).  A receiving bank is "the bank to which the sender's instruction is addressed," id. § 4A-103(4), or in other words, each bank in the chain that receives a payment order, including the originator's bank, any intermediary banks, and ultimately the beneficiary's bank.

Now we address whether Nationsbank complied with it's duty under Regulation J.  Regulation J directs that Nationsbank's duty as a receiving bank was to issue a payment order that complied with the sender's (Grossman's),

---

[7]  This appears to be what happened in Nationsbank's initial attempt to carry out Grossman's request.  Nationsbank debited $250,000 from Grossman's Nationsbank account, Nationsbank transferred the money to First Union, and First Union credited the HMF-Grossman joint venture account.  We recognize that we are simplifying the process, in that we are leaving out the role of the Federal Reserve Bank.  Often, the actual transfer involves steps in which originator's bank sends a payment order to a Federal Reserve Bank (in this function, technically an intermediary bank, to be defined and discussed below), and the reserve bank debits the account of the originator's bank at the reserve bank, and credits the reserve bank account of the beneficiary's bank.  At that point, the reserve bank sends a payment order to the beneficiary's bank, which now has the money in its account and can  credit the individual account of the beneficiary.  However, the steps involving the Federal Reserve Bank are not crucial to this case, so for simplicity's sake, we will leave them out of our descriptions.

11

instructions:

> The receiving bank is obliged to issue, on the execution date, a payment order <u>complying with the sender's order and to follow the sender's instructions concerning (i) any intermediary bank</u> or funds-transfer system to be used in carrying out the funds transfer, or (ii) the means by which payment orders are to be transmitted in the funds transfer. If the originator's bank issues a payment order to an intermediary bank, the originator's bank is obliged to instruct the intermediary bank according to the instruction of the originator. An intermediary bank in the funds transfer is similarly bound by an instruction given to it by the sender of the payment order it accepts.

12 C.F.R. Part 210, Subpart B, App. B, § 4A-302(a)(1) (emphasis supplied).

After analyzing Nationsbank's duty under § 4A-302(a)(1), we conclude that Grossman could not prove a set of facts in support of his claim which would entitle him to relief. The instructions Grossman provided to Nationsbank did not identify the banks by the terms "intermediary bank" and "beneficiary's bank." The instructions were therefore non-specific. On appeal, Grossman argues that he instructed Nationsbank to send the funds to the HMF-Grossman JV account at First Union, using Am South as an intermediary bank. However, the instructions Grossman gave Nationsbank cannot be read as indicating a normal transfer using an intermediary bank, because funds traveling through an intermediary bank are not deposited in an individual account at the intermediary bank.[8] 12 C.F.R. Part

---

[8] Article 4A defines a "bank," as used in the term "intermediary bank," as a "person engaged in the business of banking and includes a savings bank, savings and loan association, credit union, and trust company. A branch or separate office of a bank is a separate bank for purposes

210, Subpart B, App. B § 4A-105(a)(2). The instructions Grossman gave to Nationsbank specifically stated that the money was to reach the Diversified Ventures account at Am South, account number 3283155856. The next line of the instructions read "for further credit to" the HMF-Grossman JV account at First Union, which indicates that the funds were first intended to be credited to the Diversified Ventures account at Am South with instructions that the funds were "for further credit to the HMF-Grossman JV account at First Union." Indeed, Nationsbank first sent the money directly to the HMF-Grossman JV account at First Union, and Grossman told Nationsbank in no uncertain terms that was not what he had instructed.

Grossman may not have understood that once the funds were deposited in the Diversified Ventures account at Am South, neither he nor Nationsbank would have any control over the money. Nonetheless, Grossman's instructions told Nationsbank to wire the funds to the Diversified Ventures account at Am South with instructions to send the money on to the HMF-Grossman JV account at First Union. Nationsbank did exactly that. The payment order form prepared by Nationsbank, which Grossman signed, listed the "First Destination" as the Am

---

of this Article." 12 C.F.R. Part 210, Subpart B, App. B § 4A-105(a)(2). Therefore, the term "intermediary bank" does not seem to include an individual bank account.

South Diversified Ventures account, and instructed that the "Final Destination" was to be the HMF-Grossman JV account at First Union. If this is not the transaction Grossman desired, he has not alleged that he gave Nationsbank any additional instructions, or that Nationsbank had any other way of knowing that Grossman intended a different transaction. Because Nationsbank followed the instructions that Grossman provided, Nationsbank complied with its duty under Regulation J. Therefore, Grossman cannot state a claim for a violation of Regulation J, and the district court did not err in granting Nationsbank's Rule 12(b)(6) motion to dismiss.[9]

**AFFIRMED.**

---

[9] Grossman also argues that the district court erred in dismissing his complaint with prejudice, and without giving him an opportunity to amend. Because Grossman could not prove that Nationsbank failed to comply with the instructions it received, we conclude that Grossman could not amend his complaint so that it would state a claim under Regulation J. Thus, we cannot find that the district court erred in dismissing Grossman's complaint with prejudice.