[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUL 12, 2006
THOMAS K. KAHN
CLERK

No. 05-12088
Non-Argument Calendar
_____

D. C. Docket No. 00-02962-CV-RRA-S

RICKY RICARDO DANIEL,

Plaintiff-Appellant,

versus

UNITED STATES MARSHAL SERVICE,
GAIL WEISS, et al.,

Defendants,

UNITED STATES OF AMERICA,
GOLDEN RULE BBQ,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(July 12, 2006)**

Before BIRCH, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Ricky Ricardo Daniel, a federal prisoner, claims that he was injured when riding in a prisoner van that was transporting him to a federal courthouse. He appeals pro se the district court's judgment in favor of the United States in both his negligence claim brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b)(1), and his constitutional claim against two U.S. Marshals and two John Doe defendants brought pursuant to Bivens v. Six Unnamed Agents, 403 U.S. 388, 91 S. Ct. 1999 (1971). We AFFIRM the district court's judgment.

## I.  BACKGROUND

On 2 November 2000, Daniel filed an amended complaint in the district court and alleged, inter alia, that, as a result of the negligence of United States Marshal Service employees Gail Weiss and Judene Tippett, he suffered injuries during a vehicular accident that occurred on 20 October 1998.

Specifically, Daniel alleged that, while Weiss and Tippett were driving Daniel from Jasper, Alabama, to Birmingham, Alabama, the van they were driving was forced off the road by an unknown driver. Due to Weiss and Tippett's failure to secure Daniel in a seat belt, he was injured when the van was forced off the

2

road.  Daniel further alleged that his injuries resulted from Weiss's negligent driving and the fact that he was not secured in his seat.  Daniel requested a judgment for damages against the United States Marshall Service, pursuant to the FTCA.  He also raised a Bivens claim against two U.S. Marshals and two John Doe defendants including a claim under the Eighth Amendment for deliberate indifference to his medical condition.[1]

In response, the government filed a special report, which was construed as a motion for summary judgment.  On 16 June 2004, the district court adopted magistrate judge's report and recommendation.  The report concluded that, while Daniel's Bivens should be dismissed, there were issues of material fact with regard to Daniel's negligence claim and that the government's motion for summary

---

[1]Daniel also raised (1) a state law negligence claim on the basis that Weiss and Tippett violated Alabama law by failing to place him in a seat belt, (2) a claim for negligence under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 et seq., and (3) an FTCA conversion claim.  Daniel further alleged that the United States Marshal Service and Pete Patton, Weiss and Tippett's supervisor, were also defendants in the above-mentioned claims. (R1-21).  Ultimately, the district court dismissed Daniel's constitutional, state law, FELA, and conversion claims, and dismissed the United States Marshal Service, Patton, Weiss, and Tippett as individual defendants.  Therefore, Daniel's only remaining claim was his negligence claim against the United States, the only proper defendant, pursuant to the FTCA. On appeal, Daniel does not contend that the district court's findings with regard to the dismissal of his state law claim, his negligence claim under FELA, and his conversion claim under FTCA were in error.  As such, this opinion addresses only his negligence claim under the FTCA and his constitutional claim.  See Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1322 (11th Cir. 2001) (holding that issues not raised in the initial brief on appeal are deemed abandoned).

judgment should be denied.

Thereafter, Daniel filed numerous motions with respect to his case, including a demand for a jury trial and a motion for the court to appoint counsel. The district court did not address Daniel's demand for a jury trial, but rather set Daniel's case for a bench trial to commence on 16 March 2005. In response to Daniel's other motion, however, the court did appoint counsel.

During the trial concerning Daniel's negligence claim, Daniel testified that, on the day of his transport from Jasper to Birmingham, Weiss and Tippett placed handcuffs, body chains, and ankle chains on him before they placed him into the van. Daniel stated that, during the drive, Weiss was driving between 65 and 75 miles per hour in a 55 mile per hour zone when another vehicle attempted to change lanes into the lane in which Weiss was driving. Weiss then veered the van into the median, which caused Daniel to be thrown about the van, momentarily lose consciousness, and fall on the floor. Daniel testified that Tippett asked him if he was hurt and that he replied that his knee was swollen. Weiss then continued driving Daniel to Birmingham.

On cross-examination, Daniel testified that he did not recall whether the van in which he was riding collided with the other vehicle that crossed into the van's lane. Daniel also did not recall if he requested medical attention immediately after

the incident. Daniel further stated that he did not know whether another car swerved in front of the van.

Gail Weiss testified next and stated that, in accordance with marshal service procedure, she and Tippett secured Daniel in handcuffs and chains before placing him into the van. Weiss testified that, while she was driving the van in the left lane at approximately 65 miles per hour, a truck that was parallel to her van in the right lane took over her lane without a signal. Weiss explained that, to avoid hitting the truck, she steered the van into the median. Weiss further testified that she could not recall the exact location where the incident occurred. After the incident, Weiss did not call the local police because there had been no contact between her van and the truck, but she did call her office. Weiss stated that she and Tippett asked Daniel if he was okay and if he needed medical attention, and that Daniel responded that he was "okay." R12-316 at 80. Weiss did not recall Daniel complaining that he was in any pain during the remainder of the trip. On cross-examination, Weiss stated that the posted speed limit for the area where the incident occurred was 65 miles per hour. She further stated that she was not speeding or swerving in and out of the two lanes.

Judene Tippett also testified and her testimony was nearly identical to Weiss's testimony concerning the facts surrounding the incident. Tippett stated

5

that she also asked Daniel if he was okay and if he needed medical attention. Like Weiss, she said that Daniel responded that he was "okay" and did not need medical attention. Id. at 102. Tippett further stated that, when they arrived in Birmingham, she again asked Daniel if he was okay and that he said "yes." Id. at 105. Tippett also testified that Weiss was not speeding, driving recklessly, or improperly changing lanes.

After the conclusion of Tippett's testimony, both parties offered closing arguments. The court subsequently entered judgment in favor of the government. In its written opinion, the court first found that Weiss and Tippett's testimony was credible, and the court accepted their accounts of the incident at issue. The court further found that Weiss had not driven recklessly or negligently and, thus, that the government was not liable for any injuries that Daniel may have suffered as a result of the incident.

On appeal, with regard to his negligence claim under the FTCA, Daniel argues that: (1) the district court erred in failing to hold a jury trial with regard to his claim, (2) his trial counsel was ineffective, (3) the magistrate judge erred in failing to recuse himself on the ground that he was biased against Daniel, (4) the district court's factual findings and credibility determinations were clearly erroneous. We also review whether the district court erred in dismissing his

6

constitutional claims.  We address each issue in turn.

## II.  DISCUSSION

A.  <u>Right to a Jury Trial</u>

Daniel argues that the district court violated his Sixth and Seventh Amendment rights to a jury trial with regard to his negligence claim.  Specifically, Daniel maintains that he had a Seventh Amendment right to a jury trial because his case was a federal civil suit for money damages and, further, he explicitly requested a jury trial.

In reviewing cases involving FTCA claims, we review questions of law <u>de novo</u>.  <u>Worthington v. United States</u>, 21 F.3d 399, 400 (11th Cir. 1994).  Further, "[w]e review the denial of a jury trial with the most exacting scrutiny."  <u>Burns v. Lawther</u>, 53 F.3d 1237, 1240 (11th Cir. 1995) (per curiam).

Under the Sixth Amendment, criminal defendants are entitled to a trial by a jury.  U.S. Const. amend. VI.  Because Daniel brought a civil claim, and is not a criminal defendant with respect to this action, the Sixth Amendment does not apply.  However, the United States Constitution also provides, "[i]n [s]uits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ."  U.S. Const. amend. VII.  Nonetheless, in Daniel's case, the Seventh Amendment right to a jury trial also does not apply

because his action was brought pursuant to statute, rather than "at common law."

See 28 U.S.C. § 1346(b)(1). Therefore, Daniel's right to a jury trial, if one exists, must be declared by statute.

Under the FTCA, the United States may be liable for a claimant's injury where the injury was

> caused by negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Id. With the exception of § 1346(a)(1), a tax provision, "any action against the United States under section 1346 shall be tried by the court without a jury." 28 U.S.C. § 2402.

Here, because Daniel filed a claim against the United States pursuant to 28 U.S.C. § 1346(b)(1), he did not have a right to a jury trial under 28 U.S.C. § 2402. Thus, the district court did not err in holding a bench trial with regard to Daniel's negligence claim.

B. Ineffective Assistance of Counsel

On appeal, Daniel argues that his counsel was ineffective because his counsel (1) did not communicate with him, (2) failed to present various evidence, (3) failed to make timely objections to the district court rulings, (4) failed to argue

causation and liability, and (5) failed to maintain an attorney-client relationship.

In reviewing cases involving FTCA claims, we review questions of law <u>de novo</u>. <u>Worthington</u>, 21 F.3d at 400. In criminal cases, the Sixth Amendment provides defendants the right to have assistance of counsel for their defense. U.S. Const. amend. VI. However, there is no such similar guaranty for parties in a civil proceeding. <u>See</u> <u>Mekdeci v. Merrell Nat'l Labs.</u>, 711 F.2d 1510, 1523 (11th Cir. 1983) (holding that "[t]he [S]ixth [A]mendment standards for effective counsel in criminal cases do not apply in the civil context"). We explained in <u>Mekdeci</u> that, while parties have a due process right to retain counsel in civil cases, the right does not encompass an assurance that the retained counsel will be effective. <u>Id.</u> at 1522 n.19. The only remedy a party in a civil proceeding has for the alleged misconduct by his counsel is a suit against his counsel for malpractice. <u>See</u> <u>id.</u> at 1523.

Daniel brought a civil claim under the FTCA against the United States. The district court ultimately appointed counsel for Daniel. Regardless of whether the court appointed counsel for Daniel, he had no constitutional right to effective assistance of his counsel. <u>See</u> <u>id.</u> at 1522-23. Daniel's only remedy is to file a claim against his counsel for malpractice. <u>See</u> <u>id.</u> Therefore, we need not address Daniel's ineffective assistance of counsel claim.

9

C. <u>Recusal</u>

Daniel argues on appeal that the magistrate judge in this case had previously presided over a civil forfeiture case in which Daniel was involved. Daniel contends that he made the court aware of the potential conflict before his trial began and that the court disregarded his claim. Daniel maintains that the magistrate judge should have recused himself due to his bias against Daniel.

Pursuant to statute, a magistrate judge should disqualify himself "in any proceeding in which his impartiality might reasonably be questioned" and also "where he has a personal bias or prejudice concerning a party." 28 U.S.C. §§ 455(a) & (b)(1). "Although a literal reading of § 455 places the duty to recognize the conflict on the judge, this Court has held that a motion to disqualify must be timely." See <u>Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.</u>, 140 F.3d 898, 913 (11th Cir. 1998) (holding that, when a party was aware of a conflict warranting recusal at least three months before the commencement of trial and the party chose not to raise the issue until after the trial, the party had waived the issue with regard to appellate review); <u>see</u> <u>also</u> <u>United States v. Slay</u>, 714 F.2d 1093, 1094 (11th Cir. 1983) (per curiam).

Here, Daniel argues that the magistrate judge held a bias against him because the judge had also presided over a civil forfeiture proceeding involving

Daniel.  Daniel maintains that he informed the judge of the conflict before trial began, but he does not provide us with the location in the record in which he made his motion to disqualify the judge.  Upon review of the record, it appears that Daniel did not raise the recusal issue below.  Thus, Daniel has waived the issue on appeal.  See Bivens Gardens, 140 F.3d at 913.

Even if Daniel had raised the recusal issue below, Daniel does not explain on appeal how the magistrate judge's involvement in his forfeiture proceeding establishes bias on the part of the judge in his negligence action.  A previous appearance alone does not support an inference of bias.  It cannot be said, therefore, that the magistrate judge abused his discretion in failing to recuse himself from Daniel's negligence action.  See id. at 905 (holding that we review a judge's decision concerning whether to recuse himself for an abuse of discretion).

D.  Factual Findings and Credibility Determinations

Daniel argues that the district court should not have found Weiss and Tippett's testimonies credible.  Daniel maintains that Weiss did not testify accurately with regard to the location of the accident and that she did not admit that she was speeding.  Daniel further objects to the court's finding that Weiss did not drive negligently.  Daniel also contends that Weiss and Tippett's testimonies were not credible because (1) they worked together and, thus, had a reason to

11

testify falsely, and (2) there were inconsistencies in their testimony concerning the location of the accident, the speed at which Weiss was driving, and the actual speed limit on the highway.

We review a district court's findings of fact in an action tried without a jury under the clearly erroneous standard. Worthington, 21 F.3d at 400; see also Fed. R. Civ. P. 52(a). "A finding is clearly erroneous when the reviewing court, after assessing the evidence, is left with a definite and firm conviction that a mistake has been committed." Worthington, 21 F.3d at 400 (quotations omitted). Further, a district court's determination of the questions of negligence and proximate causation are also reviewed for clear error. Id.

The FTCA "was designed to provide redress for ordinary torts recognized by state law." Stone v. United States, 373 F.3d 1129, 1130 (11th Cir. 2004) (per curiam) (quotations omitted). The alleged tort in Daniel's case occurred in Alabama and, thus, Alabama tort law applies. Under Alabama law, there are three essential elements of negligence actions: "[f]irst, a duty owed by the defendant to the plaintiff[s]; second[,] a breach of that duty; and third, an injury to plaintiff[s] in consequence of that breach." Ross v. United States, 640 F.2d 511, 519 (11th Cir. 1981) (per curiam) (quotations omitted).

Daniel's assertions, that Weiss testified falsely regarding the speed at which

12

she drove on the day of the accident and the location of the accident, are without support in the record because, upon review of the trial transcript, Daniel's testimony provides the only contradiction to Weiss's testimony. The district court determined that Weiss was credible, and there is nothing in the record to suggest that this finding was clearly erroneous. While Daniel maintains on appeal that there was evidence admitted at trial that demonstrated that the speed limit on the highway at issue was 55 miles per hour, rather than 65 miles per hour as Weiss stated, it does not appear from the trial transcript that any such evidence was ever admitted.

Further, Weiss did not provide inconsistent testimony concerning the location of the accident, as Daniel claims, because she only testified that she did not recall the exact location of the accident. The fact that Weiss may have been more specific regarding the location on an earlier affidavit, as Daniel argues, is not evidence that she testified falsely, but merely suggests that, by the time the case went to trial, she had forgotten some of the details of the incident. Moreover, the location of the incident is not dispositive on the issue of liability and Daniel's counsel could have impeached Weiss's testimony had he determined she was providing false testimony. After reviewing the record, we are not "left with a definite and firm conviction that a mistake ha[d] been committed." Worthington,

13

21 F.3d at 400 (quotations omitted). Therefore, the district court's findings of fact and credibility were not clearly erroneous.

E. Constitutional Claim

On appeal, in a cursory and somewhat confusing manner, Daniel appears to raise a Bivens claim against the defendants due to their failure to provide him with medical care after the vehicle incident. As will be explained below, this claim is properly characterized as deliberate indifference of Daniel's medical needs in violation of the Fifth Amendment's Due Process Clause. The United States argues that Daniel waived his right to appeal the district court's dismissal of his constitutional claim because Daniel's notice to this Court did not list the district court's order that dismissed this claim. The United States also argues that the allegations in Daniel's appellate brief were insufficient to raise Daniel's Bivens claim on appeal. The United States cites Whetstone Candy Co. v. Kraft Foods, Inc., 351 F.3d 1067 (11th Cir. 2003), in support of its argument that, because Daniel's Bivens claim involve several defendants who were previously dismissed as individual parties, we should not now assume jurisdiction over those claims when Daniel failed to provide notice that he was appealing the order that dismissed those defendants.

With regard to our jurisdiction to hear Daniel's Bivens claim, we note our

"obligat[ion] to inquire into subject-matter jurisdiction sua sponte whenever it may be lacking." Cadet v. Bulger, 377 F.3d 1173, 1179 (11th Cir. 2004) (quotations omitted). According to Federal Rule of Appellate Procedure 3(c), a notice of appeal must contain (1) the party taking the appeal, (2) the judgment, order, or part thereof being appealed, and (3) the court to which the appeal is taken. However, we construe the requirements of Rule 3 liberally. See Smith v. Barry, 502 U.S. 244, 248, 112 S. Ct. 678, 681 (1992). Moreover, we have held that, when a party files a notice of appeal from the final judgment of the district court, we may review all prior interlocutory orders. Barfield v. Brierton, 883 F.2d 923, 930 (11th Cir. 1989) (holding that "the appeal from a final judgment draws in question all prior non-final orders and rulings which produced the judgment").

Here, Daniel's notice of appeal referred to two orders: (1) the district court's order that appointed Daniel's counsel, and (2) the district court's final judgment as to Daniel's negligence claim against the United States, pursuant to the FTCA. Construing Daniel's pro se brief liberally it appears that Daniel has raised his Bivens claims on appeal, even though he did not reference the district court's dismissal of those claims in his notice of appeal. See McBride v. Sharpe, 25 F.3d 962, 971 (11th Cir. 1994) (en banc) (noting our obligation to construe pro se briefs liberally). As explained previously, we have held that a notice of appeal from a

15

final judgment that fails to reference a specific interlocutory order does not preclude us from reviewing the interlocutory order. See Barfield, 883 F.2d at 930-31. Furthermore, while the United States is correct in asserting that, in Whetstone, we refused to review a district court's interlocutory order dismissing a defendant when the appellant failed to reference the order in its notice of appeal, that case is distinguishable from this case because Daniel is a pro se appellant, whereas the appellant in Whetstone was represented by counsel. See Whetstone Candy Co., 351 F.3d at 1079-80.

We will therefore review Daniel's Bivens claims on appeal. In so doing, we review de novo a dismissal for failure to state a claim under 28 U.S.C. § 1915A(b)(1). Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001) (per curiam). This standard of review is the same as the de novo review of a dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Id. Under such review, "all facts set forth in the plaintiff's complaint are to be accepted as true and the court [must] limit[] its consideration to the pleadings and exhibits attached thereto." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (quotations omitted). "A complaint may not be dismissed . . . unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 1231-32.

16

The availability of a cause of action for monetary damages or injunctive relief against federal officials in their individual capacities for a violation of a federal constitutional right was established in Bivens. See Bivens, 403 U.S. at 395-97, 91 S. Ct. at 2004-05. Actions for monetary damages against federal employees, pursuant to Bivens, have been permitted under 28 U.S.C. § 1331 for violations of the Cruel and Unusual Punishment Clause of the Eighth Amendment. See Carlson v. Green, 446 U.S. 14, 19, 100 S. Ct. 1468, 1472 (1980). The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994). However, because the Eighth Amendment's prohibitions against cruel and unusual punishment do not apply to pretrial detainees, which it is undisputed that Daniel was at the time of the vehicle incident, claims involving the mistreatment of pretrial detainees in custody are limited to a due process claim. See Bell v. Wolfish, 441 U.S. 520, 535, 99 S. Ct. 1861, 1872 (1979); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1539 n.3 (11th Cir. 1994) (en banc). The Due Process Clause of the Fifth Amendment, rather the Fourteenth Amendment, governs Daniel's Bivens claim because federal action is at issue. See Rodriguez-Padron v. INS, 13 F.3d 1455, 1458 n.7 (11th Cir. 1994). The standard for providing basic human needs to those incarcerated or in

17

detention is the same under both the Eighth Amendment and the Fifth

Amendment's Due Process Clause. See Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d

Cir. 2000) (applying the Eighth Amendment deliberate indifference test to a

pre-trial detainee's Fifth Amendment due process claim); cf. Marsh v. Butler

County, Ala., 268 F.3d 1014, 1024 n.5 (11th Cir. 2001) (en banc) (applying the

Eighth Amendment deliberate indifference test to a pre-trial detainee's Fourteenth

Amendment due process claim).

    1.  Defendants Weiss and Tippett

To prevail on a claim of deliberate indifference by government officials to

the medical needs of a pretrial detainee, a plaintiff "must satisfy both an objective

and a subjective inquiry. First, [he] must prove an objectively serious medical

need. Second, [he] must prove that the prison official acted with deliberate

indifference to that need." Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir.

2005) (per curiam) (quotations omitted). To meet the subjective element of the

deliberate indifference inquiry, regarding the government officials' state of mind,

three elements are required: "(1) subjective knowledge of a risk of serious harm;

(2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Id.

(quotations omitted) (alteration in original). While Bozeman dealt with a

deliberate indifference claim under the Due Process Clause of the Fourteenth

18

Amendment, we discern "no reason why the analysis should be different under the Due Process Clause of the Fifth Amendment." Cuoco, 222 F.3d at 106.

Here, Daniel's complaint did not satisfy the relevant objective and subjective inquiries. First, Daniel cannot prove that he had an "objectively serious medical need." See Bozeman, 422 F.3d at 1272. Daniel's assertion that he had a serious medical need is directly contradicted by the fact alleged in his complaint that, after his release from custody the same day on which the vehicle incident occurred, Daniel did not seek medical treatment for his injuries even though he was completely free to do so. In fact, Daniel conceded, in his objections to the magistrate judge's report and recommendation, that he did not seek medical treatment until two weeks after the incident. See R6-137 at 13-14.

Second, Daniel cannot prove that Weiss and Tippett acted with deliberate indifference to his alleged medical needs. See Bozeman, 422 F.3d at 1272. Daniel alleged that Weiss and Tippett knew of his injuries, but Daniel does not suggest how the officers could have known that Daniel's knee and back were hurt. Daniel does not rebut Weiss and Tippett's declaration that they asked Daniel if he was injured after the incident and that Daniel responded that he was "okay." Moreover, Daniel, presumably, was able to get up from the floor of the van, sit back on the seat, and continue the remainder of the trip. Daniel did not allege that

19

he complained to Weiss and Tippett about his pain. Given the circumstances as evidenced in the record, Daniel cannot prove that Weiss and Tippett subjectively knew that Daniel had sustained injuries during the incident. Therefore, the district court did not err in dismissing Daniel's constitutional claims against Weiss and Tippett for failure to state a claim upon which relief could be granted.

2. Defendant John Doe I (Supervisor Pete Patton)

In determining whether a supervisor may be liable under a Bivens claim for unconstitutional deprivation caused by an employee, we look to our precedent governing 42 U.S.C. § 1983, which allows a plaintiff who has been deprived of a federal right to bring an action against a person acting under color of state law. Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001). We have previously determined that the law governing 42 U.S.C. § 1983 is generally applied to a Bivens action, which covers those who act under color of federal law. See Kelly v. Serna, 87 F.3d 1235, 1238 (11th Cir. 1996) (holding that the applicable statute of limitations that governed a § 1983 action also governed a Bivens action).

Under § 1983, we have held that such a supervisor may not be liable "on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (quotations omitted). Supervisory liability arises,

however, in the following instances:

> either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences . . . . In addition, the causal connection may be established and supervisory liability imposed where the supervisor's improper custom or policy . . . result[s] in deliberate indifference to constitutional rights.

Id. (citation and quotations omitted) (alteration in original).

Applying our law on § 1983 to Daniel's Bivens claim, there is no evidence that Patton was causally connected to such deprivation, even assuming that Weiss and Tippett had deprived Daniel of a constitutional right. Patton did not personally participate in the incident other than to take a call from Tippett in which he asked if there were any injuries and Tippett informed him that there were none. Further, Daniel did not allege that Patton had engaged in a history of this type of deprivation and widespread abuse, nor did he allege that Patton had instituted an improper custom or policy that resulted in Daniel's constitutional deprivation. See Hartley, 193 F.3d at 1269. Thus, there existed no basis in the complaint on which to state a claim against Patton for any constitutional

21

deprivation caused by his employees.

    3.  <u>Defendant John Doe II (Agent of Weiss and Tippet)</u>

In reviewing the entire record, it is unclear to whom Daniel was referring as his second John Doe defendant. Because Daniel failed to clearly establish the John Doe's role in the alleged constitutional deprivation, or to sufficiently allege facts that support his claim against this defendant, the district court did not err in dismissing Daniel's claim against John Doe II. <u>See</u> Fed. R. Civ. P. 8(a) (a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); <u>see also</u> <u>GJR Invs. Inc. v. County of Escambia, Fla.</u>, 132 F.3d 1359, 1367 (11th Cir. 1998) ("[A] § 1983 plaintiff [must] allege with some specificity the facts which make out its claim").

## III. CONCLUSION

Upon review of the record and consideration of the parties' briefs, we discern no reversible error. We affirm the district court's denial of Daniel's FTCA negligence claim and dismissal of his constitutional claim. **AFFIRMED.**