[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 15, 2004
THOMAS K. KAHN
CLERK

No. 03-16088
Non-Argument Calendar

_____

D. C. Docket No. 00-00536-CV-J-21-MCR

HEDRICK G. STONE, JR., individually and
as parent and next friend of Tiffany Stone, a minor,
DIANE D. STONE, individually and as parent and
next friend of Tiffany Stone, a minor, TIFFANY STONE,

Plaintiffs-Appellants,

versus

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 15, 2004)**

Before ANDERSON, WILSON and RONEY, Circuit Judges.

PER CURIAM:

Tiffany Stone, then a minor, was given alcohol and assaulted by three active duty naval personnel in the hotel-like transient barracks known as the Combined Bachelor Quarters ("CBQ") at the Mayport Naval Air Station in Mayport, Florida ("NAVSTA"). Her parents, joined by Stone after she reached majority, brought this Federal Tort Claims Act suit against the United States under 28 U.S.C. §§ 1346, 2671-80. When the United States asserted lack of jurisdiction under the so-called "assault and battery" exception to the 28 U.S.C. § 1346(b) waiver of sovereign immunity, 28 U.S.C. § 2680(h), the district court retained jurisdiction on the ground that plaintiffs purported to state a claim of negligence antecedent to the alleged assault. Plaintiffs' claim of negligence is based on the allegation that by promulgating standards of conduct in the Mayport barracks ("the instructions"), the United States undertook a duty to ensure that naval personnel complied with those provisions. They asserted that the United States was negligent when Seaman Coby Portillo, who was staying in the CBQ, saw Stone enter the barracks past the normal visiting hours but did not speak to her or otherwise challenge her entry, did not notify proper authorities, and thus failed to enforce the instructions concerning the use of the barracks, which prohibited underage drinking, as well as guest visitation after 10:00 p.m. Thereafter, the district court, in a thorough and well-reasoned opinion, entered summary judgment for the United States by holding that, under Florida law,

the United States owed no duty of care to Stone under the voluntarily-adopted instructions, or otherwise. We affirm.

The Federal Tort Claims Act was "designed to provide redress for ordinary torts recognized by state law." *Ochran v. United States*, 273 F.3d 1315, 1317 (11th Cir. 2001) (internal quotation and citation omitted). As the alleged tort here occurred in Florida, Florida tort law applies. "To state a claim for negligence under Florida law, a plaintiff must allege that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the breach caused the plaintiff to suffer damages." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1262 (11th Cir. 2001). Whether, under Florida law, the United States has a duty to protect civilian guests from acts committed by naval personnel residing at the CBQ turns on whether the United States voluntarily undertook "to do an act that if not accomplished with due care might increase the risk of harm to others or might result in harm to others due to their reliance upon the undertaking confers a duty of reasonable care, because it thereby 'creates a foreseeable zone of risk.'" *Union Park Mem'l Chapel v. Hutt*, 670 So. 2d 64, 66-67 (Fla. 1996) (quoting *McCain v. Florida Power Corp.*, 593 So. 2d 500 (Fla. 1992)).

Plaintiffs argue that the government's duty in this case arises from Naval Mayport Instruction 11103.3 concerning the use of the CBQ which, they contend,

3

mandated that Portillo challenge the presence of Stone and notify NAVSTA authorities that Stone was on the CBQ's premises outside of the guest visiting hours. NAVSTA voluntarily implemented the "Instruction" for "all personnel who are berthed or have occasion to visit the CBQ at NAVSTA Mayport." The intent of the instruction is to "attempt to insure maximum provisions for the health, welfare and morale of each CBQ resident." Instruction 11103.3 further states the following in relevant part:

> 1. Alcoholic Beverages
> a. The possession and use of alcoholic beverages is allowed in CBQ rooms and lounges as permitted by state law; in the state of Florida, one must be 21 years of age . . ..
> . . .
> c. Drunkenness and/or abuse of alcoholic beverages will not be tolerated. . . .
> . . .
> 28. Guests/Visitors
> . . .
> b. All guests must be escorted at all times by the sponsor. Appropriate conduct and bearing of guests or visitors is the responsibility of the host residents. Visiting hours will be 0800 to 2200 on weekdays and 0800 to 2400 on weekdays and holidays. Unauthorized guests must be challenged by residents and staff to ensure adequate security within the buildings. . . .
> c. Guests, of the same or opposite sex, are permitted in private rooms during the hours outlined above. . . . Guest are strictly prohibited in any CBQ spaces outside permitted hours. . . .

In order to determine whether Instruction 11103.3 creates a duty to Stone as a matter of law in Florida, we construe the instruction based on its plain meaning.

4

*See, e.g., Charter Fed. Sav. & Loan Assoc., West Point, Ga. v. Office of Thrift Supervision*, 912 F.2d 1569, 1581 (11th Cir. 1990). A review of the language reveals that the "purpose" of the instruction was to "establish policy, procedures and standards governing the operation, management, utilization and maintenance of" the CBQ. The "Background" section of this instruction states, "The operation of Navy Bachelor Quarters significantly impacts morale, retention and mission performance. . . . Efficient management of Navy Bachelor Quarters maintains high standards of service to the residents, protects the Navy's substantial investment in facilities, and reduces operation costs." The CBQ's manager, Joanne Farrelly, testified that Instruction 11103.3 was promulgated to provide guidance to Mayport naval personnel residing in the barracks, attempting to protect these personnel and the millions of dollars of property at the Mayport facility. The guest visiting hours provision of the instruction, for example, states that "[g]uests are permitted in the CBQ, provided that these guest visits do not interfere with good order and discipline or inconvenience other occupants."

Accordingly, it appears from a plain reading of the instruction that its purpose was not to create a duty of care to visiting civilian guests of the CBQ, but instead was intended to protect governmental equipment and the comfort of military personnel visiting the CBQ. Nothing in this instruction indicates that civilians were encouraged

5

to visit the CBQ so as to create an assumption of duty by the United States under Florida law to protect Stone. Stated differently, as to Portillo, who was merely a military guest in the barracks on the same footing as the three seaman who assaulted Stone, there was no legal duty owed to Stone, a civilian guest.

Under Florida law, an owner of a premises has no duty to protect an invitee from the willful criminal act of another unless that conduct could have been foreseen or anticipated. *See Doe v. United States*, 718 F.2d 1039, 1042 (11th Cir. 1983) (noting that plaintiff's failure to show previous similar criminal acts committed upon postal patrons indicated that such crimes were not foreseeable so as to create a duty on the part of the government under Florida law); *see also Hardy v. Pier 99 Motor Inn*, 664 So. 2d 1095, 1097 (Fla. 1st DCA 1995) (noting that motel not liable for the conduct of a third party on premises that causes injury unless injurious conduct "is reasonably foreseeable to the hotel"). Here, the plaintiffs have failed to show that the United States could have foreseen or anticipated the actions of the three naval personnel involved in the assault. It should be noted that the three men were discharged from the service, convicted of their crimes, and sentenced to varying terms of imprisonment.

Therefore, plaintiffs have failed to establish that there was a duty on the part of the United States to protect Stone from the acts committed by the military guests

in the barracks.  As such, there can be no claim for negligent failure to perform a duty.

Because the United States could not be found negligent as to Tiffany Stone, the district court did not err by holding that her parents' derivative loss of consortium claims likewise failed as a matter of law.  *See, e.g., Faulkner v. Allstate Ins. Co.*, 367 So. 2d 214, 217 (Fla. 1979) (holding no derivative loss of consortium claim without alleged injured's ability to recover in the first instance).

AFFIRMED.