[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13634

Non-Argument Calendar

_____

DRAESHUND KENAITAY MAGEE,

Plaintiff-Appellant,

*versus*

UNITED STATES OF AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 1:20-cv-00294-MHH-HNJ

_____

Before JORDAN, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Draeshund K. Magee, a former federal prisoner proceeding pro se, appeals the district court's grant of summary judgment on his medical malpractice claim against the United States, brought pursuant to the Federal Tort Claims Act and the Alabama Medical Liability Act. We conclude that the district court did not abuse its discretion in denying Magee's motion to appoint a medical expert, and that it correctly determined that Magee could not prove one or more elements of his medical malpractice claim without supporting expert testimony. We therefore affirm.

## I.

Magee filed a civil complaint against the United States under the Federal Tort Claims Act, alleging that prison medical staff at the Federal Correctional Institution in Talladega, Alabama failed to provide appropriate treatment for his dislocated shoulder. Specifically, Magee alleged that the medical staff failed to arrange for physical therapy and follow-up care by an orthopedic specialist, causing him to suffer prolonged and unnecessary pain and restricted use of his shoulder. He asked the court to appoint a medical expert to testify on his behalf regarding the standard of care for the treatment of his injury and the consequences of delaying care.

The government responded to the complaint and moved for summary judgment. Attachments to the motion for summary judgment included Magee's medical records and an affidavit by

Mark Holbrook, M.D., the Clinical Director at FCI Talladega.  In his affidavit, Dr. Holbrook testified that he had reviewed Magee's medical records and opined that Magee had "received evidence-based proven effective medical care and treatment in accordance with medical standards."  He opined that immediate follow-up with an orthopedist was not required because discharge instructions from Magee's emergency room visit instructed him to follow up with his primary care physician.  He also testified that he did not prescribe physical therapy for Magee because his condition did not warrant it.

The medical records submitted by Magee and the government show the following undisputed facts.  On January 5, 2018, Magee reported to prison medical staff that a guard had dislocated Magee's right shoulder when handcuffing him after an altercation in the prison yard.  Dr. Holbrook examined him, confirmed the dislocation by x-ray, gave him pain medication, and sent Magee to the emergency room at a local hospital for treatment.

At the hospital, emergency room physician Robert Ruth, M.D., performed a closed reduction of Magee's shoulder joint and placed his arm in a shoulder immobilizer.  Dr. Ruth gave Magee discharge instructions to return to the emergency room or follow up with his primary care physician if he was feeling worse or experiencing new symptoms, and to follow up with an orthopedist and keep the shoulder immobilizer in place until that follow-up visit. The discharge instructions listed Dr. Holbrook as the follow-up physician.  Dr. Ruth also gave Magee preprinted discharge

instructions describing the causes, symptoms, diagnosis, and treatment of shoulder dislocation and advising him on the use of the shoulder immobilizer. The preprinted instructions explained that a "shoulder dislocation is treated by placing the humerus back in the joint (*reduction*)." It also stated that after reduction, the patient should wear the shoulder immobilizer for up to three weeks, after which "your caregiver may prescribe physical therapy to help improve the range of motion in your shoulder joint." The instructions advised Magee not to use his arm out of the immobilizer without doctor approval and to always wear the immobilizer at night.

Later that night, Magee removed his shoulder immobilizer and re-injured his shoulder by rolling over on it in bed. Prison medical staff sent him back to the hospital, where he was treated by Jorge Blanco, M.D. Dr. Blanco gave Magee another copy of the preprinted instructions for treatment of his shoulder dislocation and use of the shoulder immobilizer and instructed him to follow up with his primary care physician in two days.

Magee was again examined by a nurse on his return to the prison. He reported shoulder pain and was advised to keep his arm in the shoulder immobilizer until his follow-up with orthopedics and report to sick call as needed.

On January 17, 2018, Magee complained of shoulder pain to a nurse making rounds in his housing unit. The nurse noted that he "continue[d] to not follow medical instructions to not use right

shoulder. Keep arm in immobilizer sling and to not lift anything." The nurse contacted Dr. Holbrook, who prescribed ibuprofen.

Two days later, Magee again complained of shoulder pain to a nurse making rounds in his housing unit and requested physical therapy. He also reported several other issues, including vision problems. The nurse informed him that only one medical complaint could be addressed at a time, and Magee elected to discuss his vision. In early February, medical staff renewed Magee's prescription for ibuprofen to treat his shoulder pain.

Over the next several months, Magee was seen by medical staff on six separate occasions for various concerns, but he did not report any problems with his shoulder. During his annual chronic care visit in January 2019, he reported having shoulder pain "at times."

Several months after that, on September 16, 2019, Magee reported having periodic shoulder pain for several months. He described the pain as a level 3 out of 10 and said that it was relieved with pain medication. The nurse practitioner referred him to the commissary for ibuprofen. She also ordered a shoulder x-ray, which was not completed (for reasons that are disputed).

On November 21, 2019, Magee reported to sick call complaining of worsening right shoulder pain. He said that he thought his shoulder had "popped out of place" the night before, and he rated his pain as a 9 out of 10. The nurse practitioner prescribed pain medication and a shoulder x-ray. Dr. Holbrook reviewed the

x-ray, which showed no dislocation, and gave Magee a routine referral to an orthopedist.

Almost three months later, in February 2020, Magee visited an outside orthopedist. The orthopedist examined Magee's shoulder and found limited range of motion, mild weakness, and notable crepitus. He recommended an MRI and follow-up after the MRI was obtained. Dr. Holbrook ordered an MRI, with a target date of May 29, 2020.

On January 1, 2021, Magee submitted a sick-call request complaining of severe, unbearable pain in his shoulder. He was seen three days later in his housing unit by a nurse practitioner, who noted his complaints of shoulder pain (rated as 6 out of 10) for the past month. The nurse practitioner prescribed ibuprofen and ordered an x-ray. A prison physician noted "abnormal findings" on the shoulder x-ray and that an MRI might be indicated. Magee was again advised to purchase ibuprofen at the prison commissary until the MRI could be completed. According to Dr. Holbrook, the MRI was not obtained while Magee was housed at FCI Talladega because of prison transport restrictions related to COVID-19.

In a supplemental filing, Magee informed the court that he had been transferred from Talladega to the federal prison in Bastrop, Texas on January 31, 2021. Magee stated that the Clinical Director at Bastrop had physically examined him and ordered x-rays, which Magee said was "the same treatment the Defendant(s) (F.C.I. Talladega) denied Magee from Jan. 5, 2018 thru [sic] Jan. 31, 2021." According to Magee, the physician at Bastrop had

subsequently ordered an MRI, which had been completed on August 31, 2021.

After reviewing Magee's medical records and the parties' briefing, the district court denied Magee's motion for the appointment of an expert and granted summary judgment in favor of the United States. The court explained that Magee had not made a sufficient showing of negligence by the Talladega prison medical staff to warrant the appointment of an expert. The court pointed out that although the physician who initially treated Magee in the emergency room instructed him to follow up with an orthopedist, Magee had immediately reinjured his shoulder and received new instructions to follow up with his primary care physician after his second visit to the emergency room. The court also explained that Magee's medical records belied his complaint that Talladega medical staff had not provided physical examination and x-rays, showing that he was evaluated and usually provided with medication whenever he reported shoulder pain. The court noted that Magee was referred to an orthopedist when he reported worsening pain, and it declined to "second-guess" the scheduling decisions that delayed his MRI in light of the multiple challenges to prison administration posed by COVID-19. The court concluded that because Magee's medical records demonstrated that prison medical staff had not breached the standard of care, the United States was entitled to summary judgment. This appeal followed.

## II.

We review the district court's denial of a request for appointment of an expert for abuse of discretion. *Bass v. Perrin*, 170 F.3d 1312, 1319 (11th Cir. 1999). Under this standard, we will affirm the district court's decision "unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005).

We review the district court's grant of summary judgment de novo. *Swafford v. United States*, 839 F.3d 1365, 1369 (11th Cir. 2016). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

The Federal Tort Claims Act (FTCA) waives the sovereign immunity of the United States for personal injury claims arising from the negligence of government employees acting within the scope of their employment if a private person would be liable to the claimant under "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Thus, because the medical negligence alleged here occurred in Alabama, Alabama provides the substantive law applicable to Magee's FTCA claim. *See id.*; *Stone v. United States*, 373 F.3d 1129, 1130 (11th Cir. 2004).

To establish liability for medical malpractice in Alabama, the plaintiff must prove (1) the appropriate standard of care, (2) a

deviation from that standard, and (3) a proximate causal connection between the deviation and the plaintiff's injury. *Hauseman v. Univ. of Ala. Health Servs. Found.*, 793 So. 2d 730, 734 (Ala. 2000). In most medical-malpractice cases, a plaintiff must prove his case through testimony by a "similarly situated" medical expert. *Id.*; *see Univ. of Ala. Health Servs. Found. v. Bush*, 638 So. 2d 794, 802 (Ala. 1994).

Here, Magee acknowledges that he did not present expert testimony in support of his claim, and that he could not prove medical negligence under Alabama law without such testimony. He argues that the district court should have granted his motion to appoint an expert under Rule 706 of the Federal Rules of Evidence because as an indigent prisoner, he lacked the means to obtain an expert on his own.

Rule 706 gives district courts the discretionary authority to appoint experts. Fed. R. Evid. 706(a). In civil cases, the experts are to be compensated "by the parties in the proportion and at the time that the court directs," and the compensation is later charged as costs. Fed. R. Evid. 706(c). "Where a party requests the appointment of an expert to aid in evaluating evidence that is relevant to a central issue in the case, the court is obligated to fairly consider the request and to provide a reasoned explanation for its ultimate decision on the matter." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1348 (11th Cir. 2003). But the court generally is under no affirmative obligation to grant the party's request. *Id.* "Quite the contrary, as long as the district court thoroughly

considers a request for the appointment of such an expert and reasonably explains its ultimate decision thereon, that decision is vested in the sound discretion of the trial court." *Id.* at 1348–49.

The district court here gave due consideration to Magee's motion and provided a reasoned explanation for its decision. It explained that it had reviewed Magee's medical records, which were readily comprehensible to a layperson, and determined that they did not support his allegations that prison medical staff failed to provide necessary and appropriate care for his shoulder injury. The court thus concluded that the assistance of a court-appointed expert was not warranted. Under the circumstances, we cannot say that this decision was a clear error in judgment. *See Ameritas Variable Life Ins. Co.*, 411 F.3d at 1330.

And as we have explained, the lack of expert support was fatal to Magee's medical malpractice claim. Under Alabama law, expert testimony is ordinarily required to prove a violation of the applicable standard of care as well as causation. *See Cobb v. Fisher*, 20 So. 3d 1253, 1257 (Ala. 2009); *Bush*, 638 So. 2d at 802. Summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV.

The district court did not abuse its discretion in denying Magee's motion for the appointment of an expert witness. And because Magee could not prove essential elements of his medical

21-13634               Opinion of the Court                    11

negligence claim without expert testimony, the district court did not err in granting the government's motion for summary judgment. We therefore affirm.

    **AFFIRMED.**