[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-12196

Non-Argument Calendar

_____

MARILYS GIMENEZ,
individually and as Parent and Natural Guardian
of A.J.G.,

Plaintiff-Appellant,

*versus*

MCLANE COMPANY, INC., et al.,

Defendants,

MCLANE FOODSERVICE, INC.,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:23-cv-01102-GAP-RMN

————————————

Before BRANCH, TJOFLAT, and ANDERSON, Circuit Judges.

PER CURIAM:

This case arises from a tragic and senseless act of violence. Marilys Gimenez was working a routine shift at McLane Foodservice when her former partner, Felix Joseph, unlawfully entered the facility and set her on fire. Her injuries were catastrophic.

In the aftermath, Ms. Gimenez sued McLane for negligence. She alleged that inadequate security measures made the attack foreseeable, and that McLane breached its duty to protect her. The District Court disagreed and granted summary judgment for McLane.

The question on appeal is not whether Ms. Gimenez suffered grievous harm—she did. Nor is it whether Joseph should be held accountable—he was criminally convicted and sentenced. The narrow issue is whether under Florida law, McLane is liable for Ms. Gimenez's injuries. Because we find proximate causation lacking, we hold that it is not. We affirm.

## I.    Facts

Marilys Gimenez worked in customer service and payroll at McLane Foodservice's Orlando facility. Her assailant, Felix Joseph, had previously worked as a truck driver for McLane but was terminated in 2019 for aggressive driving. In 2018, the two began an intimate relationship that lasted about four months. They remained on amicable terms until October 2020.

That October, Joseph began expressing anger over the breakup. By January 2021, Ms. Gimenez cut off all contact. Still, Joseph continued to send her messages, including one threatening to get her fired. Ms. Gimenez never reported these communications to McLane.

At the time, McLane's facility was secured by a badge-access entry system and a closed-circuit camera system. The company had a written policy prohibiting unauthorized entry and trained employees annually on security procedures.

About one year after Ms. Gimenez cut off contact, Joseph rented a car to drive to McLane's Orlando facility and attack her. He wore his old McLane sweatshirt, a freezer suit, gloves, and sunglasses to blend in with other employees. Joseph first tried to enter the facility through locked warehouse doors. When that failed, he waited outside until an employee used a badge-access entrance, then followed the employee inside. Once in the building, Joseph located Ms. Gimenez at her desk, doused her with gasoline, and set her on fire. He fled through an emergency exit.

Joseph was arrested and pleaded guilty to attempted first-degree murder and arson causing serious injury. He was sentenced to fifteen years in prison followed by fifteen years of probation. He told investigators he targeted McLane because he knew Ms. Gimenez would be there without her family, and he "got lucky" when another employee opened the door.

Ms. Gimenez sued McLane alleging (1) negligence and (2) loss of parental consortium under Florida law. Both sides moved for summary judgment. The District Court granted it to McLane, reasoning that:

> the record does not demonstrate that McLane could (or should) have known (or expected) that a "triggered" former employee might: (1) don an old uniform in an effort to blend in; (2) rent a car to conceal his identity; (3) drive to McLane's Tradeport warehouse; (4) wait for an opportunity to circumvent McLane's security measures and annual employee trainings; (5) get "lucky"; (6) break into a warehouse that is generally locked and closed to the public in broad daylight; and (7) proceed to heinously attack a former intimate partner and current employee while she was working at her desk.

*Gimenez v. McLane Foodservice, Inc.*, 2024 WL 3346884, at *6 (M.D. Fla. June 10, 2024).

Ms. Gimenez timely appeals.

## II.    Discussion

To prevail on her negligence claim, Ms. Gimenez must establish that McLane owed her a legal duty, breached that duty, and that the breach both actually and proximately caused her injuries. *See Stone v. United States*, 373 F.3d 1129, 1130 (11th Cir. 2004). Although causation is typically a question of fact, summary judgment is appropriate when no reasonable jury could conclude that the defendant's conduct foreseeably caused the injury. *See McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503–04 (Fla. 1992); Fed. R. Civ. P. 56. That is the case here. On this record, even if McLane owed Ms. Gimenez a duty and breached it—questions we do not decide—her claim fails at the causation stage.

"Under Florida law, a 'harm is proximate in a legal sense if prudent human foresight would lead one to expect that similar harm is likely to be substantially caused by the specific act or omission in question.'" *Colon v. Twitter, Inc.*, 14 F.4th 1213, 1224 (11th Cir. 2021) (quoting *Ruiz v. Tenet Hialeah Healthsystem, Inc.*, 260 So. 3d 977, 982 (Fla. 2018)). "Where a third party . . . has committed an intentional tort or criminal act causing the plaintiff's injuries, '[t]he proper question is whether th[at] individual's conduct is 'so unusual, extraordinary, or bizarre (i.e., so unforeseeable) that the policy of the law will relieve the [defendant] of any liability for negligently creating [the] dangerous situation.'" *Id.* (quoting *Goldberg v. Fla. Power & Light Co.*, 899 So. 2d 1105, 1006 (Fla. 2005)).

Even accepting all of Ms. Gimenez's allegations, the record contains no facts or inferences that McLane's conduct proximately

6                          Opinion of the Court                          24-12196

caused her harm.[1] *See Chirillo v. Granicz* , 199 So. 3d 246, 252-53 (Fla. 2016) (holding that a judge can remove proximate causation from the fact-finder "where the evidence supports no more than a single reasonable inference" (quoting *McCain*, 593 So. 2d at 504)). Ms. Gimenez points to several asserted failures: McLane allowed former employees to keep company uniforms, inadequately enforced badge-access procedures, failed to station security guards, did not monitor cameras in real time, and permitted doors to be propped open. But none of these lapses, if true, makes it foreseeable that a former employee would don a disguise, sneak inside, and set an employee on fire at her desk. Said differently, Ms. Gimenez's injuries were the result of a "freakish and improbable chain of events" that were "utterly unpredictable in light of common human experience." *See McCain*, 593 So.2d at 503; *accord Las Olas Holding Co. v. Demella*, 228 So. 3d 97, 106-07 (Fla. Dist. Ct. App. 2017).

Consider the allegation that McLane was negligent in allowing former employees to keep their uniforms. No prudent mind would conclude that such a policy made it foreseeable that a former employee would sneak in the facility and set a current employee on fire. The same is true of the propped-open doors. One might plausibly argue that such a lapse creates a risk of trespass or theft. But the notion that it makes foreseeable a violent and calculated attack of this nature stretches foreseeability far beyond its

---

[1] At the summary judgment stage, we "view all evidence and make all reasonable inferences in favor of" Ms. Gimenez. *See Whatley v. CNA Ins. Cos.*, 189 F.3d 1310, 1313 (11th Cir. 1999).

legal limits. So it goes for the remaining alleged breaches. Ultimately, Joseph's deliberate decision to disguise himself, exploit an unanticipated opportunity, and commit a brutal and preplanned attack is exactly the sort of "unusual, extraordinary, [and] bizarre behavior" that severs the causal chain as a matter of law.[2] *See Colon*, 14 F.4th at 1224 (quoting *Goldberg*, 899 So. 2d at 1116). No reasonable jury could find that McLane's alleged breaches substantially and foreseeably caused the harm Ms. Gimenez suffered.[3]

### III.    Conclusion

What happened to Ms. Gimenez is unspeakable. She was targeted in a place where she had every right to feel safe—her workplace—by someone she once trusted. But under Florida law, negligence liability does not extend to every imaginable harm. It reaches only those harms that were the foreseeable and substantial result of the defendant's conduct. Because no reasonable jury could find that McLane's alleged lapses made this brutal, calculated attack foreseeable, we affirm.

**AFFIRMED.**

---

[2] Ms. Gimenez's loss-of-consortium claim is derivative of her negligence claim. *See Stone*, 373 F.3d at 1132. Because the negligence claim fails, so does the loss-of-consortium claim. *See id.*

[3] The District Court resolved this case mainly on the ground that McLane lacked a duty. Because we resolve this appeal on causation, we need not and do not address whether Ms. Gimenez's claim would also fail at the duty or breach stages.